| UNITED STATES DISTRICT COURT | NOT FOR PUBLICATION |
| --- | --- |
| EASTERN DISTRICT OF NEW YORK | |

-----------------------------------------------------------x
LARRY JACOBSON, as Chairman of the
Joint Industry Board of the Electrical Industry,

       Plaintiff,    **MEMORANDUM and ORDER**

   -against-      05-CV-2418 (SLT)(SMG)

LINA ELECTRIC CORP. and
ANTE KRSLOVIC,

       Defendants.
-----------------------------------------------------------x

**TOWNES, United States District Judge:**

   On May 19, 2005, plaintiff Larry Jacobson – the Chairman of the Joint Industry Board of the Electrical Industry (the "Joint Board") and a fiduciary of various employee benefit plans – commenced this action pursuant to the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), to recover delinquent contributions and other money which defendant Lina Electric Corp. ("Lina") and its principal, defendant Ante Krslovic, allegedly owe the plans. Defendants failed to answer the complaint and, on October 27, 2005, the Clerk of Court entered the defendants' default pursuant to Fed. R. Civ. P. 55(a). Plaintiff now moves for a default judgment pursuant to Fed. R. Civ. P. 55(b)(2). However, because plaintiff's motion is deficient in the various respects described below, plaintiff's motion is denied without prejudice to refiling an amended motion within sixty (60) days.

**BACKGROUND**

   In his complaint, plaintiff implies that Lina, a company required to remit certain contributions and to submit weekly payroll reports to the Joint Board under the terms of a Collective Bargaining Agreement, failed to fulfill these obligations. After plaintiff or the Joint Board threatened legal action, defendants, seeking to avoid court, entered into a "Stipulation and Forbearance Agreement," dated January 16, 2003 ("the Agreement"). Plaintiff's complaint

specifically alleges that the Agreement, as amended by letters dated July 3, 2003 and August 20, 2003 (collectively, "the Amendments"), obligated defendants to pay "contributions to the Joint Board in the amount of approximately $26,670.75, which amount represented required contributions due for the weeks ending October 9, 2002, December 18, 2002, January 29, 2003, February 12, 2003, February 26, 2003, and March 19, 2003." Complaint at ¶ 17.

Plaintiff's complaint implies that defendant paid most, but not all, of the payments required under the Agreement and Amendments. However, on or about September 1, 2004, the Joint Board conducted an audit of Lina's payroll records for the period of weeks ending July 2, 2003, through June 30, 2004, and discovered that Lina had failed to properly report and remit an additional $4,836.91 in contributions over that one-year period. *Id.* at ¶¶ 28-29. In November and December 2004, the Joint Board demanded payment of this "audit deficiency," *id.* at ¶¶ 30-31, but defendants "refused to remit the amounts due under the audit." *Id.* at ¶ 35.

By letter dated March 30, 2005, the Joint Board both demanded payment of the $4,836.91 audit deficiency and notified defendants that they were in default under the Agreement in the amount of $3,818.99. *Id.* at ¶ 32. When defendants failed to pay the audit deficiency or to cure the default within three days, as required under the terms of the Agreement, plaintiff commenced this action. Plaintiff's complaint seeks, *inter alia*, a judgment "[o]rdering defendants, jointly and severally, to pay the Joint Board the principal balance remaining under the [Agreement, as amended]," the "amount of unpaid employee benefit contributions and other payments determined to be due . . . for any weeks that are unpaid as of the date the judgment is entered," the interest due on the amounts "at the interest rate prescribed by Section 6621 of the Internal Revenue Code," and other amounts. *Id.* at pp. 9-10.

When defendants did not answer or otherwise respond to plaintiff's complaint, plaintiff

requested that the Clerk of Court enter the default and moved for a default judgment pursuant to Fed. R. Civ. P. 55(b)(2). The Clerk of Court has entered defendants' default, and this Court has painstakingly reviewed plaintiff's motion for a default judgment.

## DISCUSSION

Once a default judgment is entered, a defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. *See Greyhound Exhibitgroup, Inc., v. E.L.U.L. Realty Corp.,* 973 F.2d 155, 158 (2d Cir.1992), *cert denied*, 506 U.S. 1080 (1993). However, allegations relating to damages are not deemed admitted; claims for damages generally must be established in an evidentiary proceeding at which the defendants are afforded the opportunity to contest the amount claimed. *Id.* A court must determine that there is a basis for the damages sought by a plaintiff before entering judgment in the amount demanded. *See Fustok v. Conticommodity Servs., Inc.,* 873 F.2d 38, 40 (2d Cir.1989). This determination may be based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence. *See* Fed. R. Civ. P. 55(b)(2); *Action S.A. v. Marc Rich & Co., Inc.,* 951 F.2d 504, 508 (2d Cir.1991); *Fustok,* 873 F.2d at 40.

By defaulting in this case, defendants have conceded, *inter alia*, that they are liable under the terms of the Agreement, as amended, "in the amount of approximately $26,670.75 . . . for the weeks ending October 9, 2002, December 18, 2002, January 29, 2003, February 12, 2003, February 26, 2003, and March 19, 2003." Complaint at ¶ 17. In his motion papers, plaintiff implies that defendants have now paid off almost all of this debt, alleging that "the Joint Board has determined that the correct amount due under the Stipulation is $786.84." Supplemental Declaration of David R. Hock in Support of Request to Enter Default Judgment, dated Nov. 15,

3

2005 (the "Supplemental Declaration"), at ¶ 12.

However, the exhibits to the Supplemental Declaration and to the Declaration of David R. Hock in Support of Request to Enter Default Judgment, dated Oct. 13, 2005 (the "Original Declaration") undercut plaintiff's calculations. For reasons which are not clear, plaintiff's complaint sought to recover only the $26,670.75 due for the weeks ending October 9, 2002, December 18, 2002, January 29, 2003, February 12, 2003, February 26, 2003, and March 19, 2003. See Complaint at ¶ 17. The complaint did not seek to recover the further $20,148.24 due for the weeks ending November 20, 2002 through December 25, 2002. Since defendant is deemed to have admitted only his liability for the $26,670.75 debt, and not the additional $20,148.24 debt, *see Greyhound Exhibitgroup,* 973 F.2d at 158, plaintiff may only recover the unpaid balance of the $26,670.75 debt.

It appears from the calculations attached as Exhibit B to the Supplemental Declaration that the $786.84 plaintiff requests includes the amount still due upon the $20,148.24 debt. Since plaintiff cannot recover the unpaid balance on the $20,148.24 debt, plaintiff must provide documentation establishing what portion of the $786.84 is attributable to the $26,670.75 debt.[1]

Plaintiff must also recalculate the interest payable upon the balance due. In the Supplemental Declaration, plaintiff has calculated interest based on the remaining balance due on both debts. *See* Supplemental Declaration, Ex. C. Moreover, although these calculations are

---

[1] Exhibit B suggests that the $1,000 weekly payments were applied "as per Filemaker" to either the $20,148.24 debt due under the "1st Stip" or the $26,670.75 due under the "2nd Stip." However, plaintiff's motion papers do not explain what "Filemaker" is or how the decision to apportion the payments was made. Moreover, "Filemaker" appears to have allocated $24,000 to pay the amount due under the "1st Stip," even though that amount was only $20,184.24 to begin with and was subsequently revised downward.

4

based on an interest rate of 6% per annum, plaintiff does not adequately explain where this interest rate comes from. Title 29, section 1132(g), of the United States Code provides that a fiduciary who sues to recover unpaid contributions can recover interest at "the rate provided under the plan, or, if none, the rate prescribed under [26 U.S.C. § 6621]." The Original Declaration implies that the plan documents provide an interest rate; it attaches a document which indicates that the Joint Board's Trustees adopted a resolution setting the interest rate at ½% above the Prime Rate quoted by Citibank at the start of each quarter, and providing that that interest should be compounded weekly. *See* Original Declaration, Ex. B. However, it is unclear from plaintiff's motion papers whether the plan documents were ever revised in accordance with this resolution. Moreover, plaintiff does not appear to apply this interest rate.[2]

Plaintiff also seeks to recover for the "audit deficiency." Although the complaint alleges that Lina originally owed $4,836.91 for the period of weeks ending July 2, 2003, through June 30, 2004, Complaint at ¶ 29, the Supplemental Declaration conclusorily states that the Joint Board subsequently "determined that the correct amount . . . of the audit deficiency is $1,214.60." Supplemental Declaration at ¶ 16. Plaintiff does not provide any explanation as to how plaintiff arrived at this calculation. Moreover, while plaintiff seeks to recover interest on this amount, the only document the Supplemental Declaration references in support of the interest claim is Exhibit C. This exhibit, however, pertains only to the amounts due under the Agreement, as amended, and does not pertain to the audit deficiency.

Finally, plaintiff's attorneys' fees application is defective in that it does not attach

---

[2] It seems unlikely that the 6% figure used by plaintiff is actually the prime rate plus ½%, since the rate remained steady throughout the multi-year period set forth in Exhibit C to the Supplemental Declaration. In addition, plaintiff's calculation is based on simple interest, not interest compounded weekly.

resumes or other evidence to establish that attorneys David R. Hock or Molly A. Brooks have the experience necessary to command $200 per hour, or that their paralegal has the experience needed to justify $75 per hour. *See*, *e.g.*, *Commission Express Nat'l, Inc. v. Rikhy*, No. CV-03-4050 (CPS), 2006 WL 385323, at *6 (E.D.N.Y. Feb. 17, 2006) ("Hourly rates approved in recent Eastern District of New York cases have ranged from $200 to $300 for partners; $100 to $150 for junior associates and $200 to $250 for senior associates" and from $60 to $75 for paralegals).

In addition, plaintiff, who does not seek to recover for all of the hours reflected on the contemporaneous time records, *see* Supplemental Declaration, Ex. D, does not explain which hours he is including in his fees calculation.

## CONCLUSION

In light of the above-described deficiencies in plaintiff's motion papers, plaintiff's motion for a default judgment is denied without prejudice to refiling an amended motion within sixty (60) days.

**SO ORDERED.**

/s/
SANDRA L. TOWNES
United States District Judge

Dated: Brooklyn, New York
September 29, 2006